UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

MERLIN KAUFFMAN, an individual       CIVIL ACTION NO:   3:20-cv-17-J-34JBT
      Plaintiff,

v.

TRANS HIGH CORPORATION, a New
York company and HIGH TIMES HOLDING
CORPORATION, a Delaware company
      Defendant.
                                    /

## MOTION FOR DEFAULT FOR VIOLATING COURT ORDERS

Plaintiff, Merlin Kauffman (the "Plaintiff"), by and through undersigned counsel, and pursuant to the Federal Rules of Civil Procedure, and the M.D. Fla. Local Rules, hereby files his Motion for Entry of Default and Default Judgment against Defendants for violating this Court's Orders [Doc. 64 and 78] (the "Orders"), and states as follows:

1.     On June 9, 2021, this Court entered an Order on Plaintiff's prior motion to compel and ordered, inter alia, "On or before June 23, 2021, Defendants shall produce all documents at issue in the Motion without objection….The parties shall immediately confer and schedule the continued deposition of Defendants' corporate representative as to Topic Nos. 2, 4, 5, 9, and 15. The continued deposition must take place on or before June 30, 2021." [Doc 64].

2.     The next day, on Friday June 10, 2021, the parties attended the Court Ordered mediation which resulted in an impasse. [Doc 68].

3.     On Monday, June 14, 2021, since the mediation was unsuccessful, the undersigned reached out to counsel for Defendants regarding setting the continued deposition of the corporate representative(s) for Defendants and offered three available dates. [Doc. 70-1]

4.     Counsel for Defendants responded that he was available those dates, but needed to

1

confer with his client. *Id.*

5.      On June 16, 17, and 18 the undersigned made additional attempts to schedule the continued deposition. *Id*.

6.      As shown in Defendants' counsel's communication on June 18, 2021, Defendants have not cooperated or provided available dates. *Id*.

7.      The undersigned explained that these available dates are not open ended, and in fact on June 17, noted that one of the dates was no longer available. *Id*.

8.      The Court additionally entered an Order extending the dispositive motion deadline. [Doc. 67].

9.      Defendants failed to provide available dates for the continued deposition and failed to comply with the Court Ordered deadline of June 30 for the continued depositions.

10.     The Court's Order [Doc 64] required the parties to confer and schedule the continued deposition and as a result, Plaintiff did not unilaterally set the depositions.

11.     As of the date of this filing, Defendants have not supplemented their discovery responses, including the production of ordinary banking records as required to have been done by Order of this Court [Doc. 64].

12.     During this same time period that the Defendants were refusing to comply with the discovery orders of this Court, specifically on June 11, counsel for Defendants filed a motion to withdraw as counsel. [Doc. 65].

13.     Counsel for Defendants also filed under seal (Doc 74) a response to this Court's prior Order to Show Cause [Doc. 64] as it relates to counsel's position for same.

14.     In light of Defendants' counsel's response, this Court took the same counsel's motion to withdraw under advisement and ordered, that on or before August 2, 2021, Defendants

"either have their successor counsel file a notice of appearance or, if no successor counsel is retained by that date, Defendants shall file a notice stating how they intend to proceed." [Doc. 78]

15.     Defendants failed to comply with this Court Order [Doc. 78].   No successor counsel has appeared, and no actual plan for proceeding was submitted.

16.     Defendants continue to have counsel who claims "my clients don't communicate with me" [Doc. 80-1] yet after being informed of Plaintiff's impending motion for default are suddenly seeking new counsel.

17.     On August 9, 2021, Defendants filed seven-day late motion for extension of time to retain new counsel [Doc. 79].

18.     Plaintiff filed an opposition to the motion for extension of time. [Doc. 80].

## Memorandum of Law

Local Rule 2.02(b)(2) requires a corporation to be represented by an attorney. A lay person is not permitted to represent any other person or corporate entity. See *Cabral v. Stormshield Prot. Corp.*, 2007 WL 1725623, at *1 (M.D. Fla. June 14, 2007)(Hon. Morales Howard)(citing *United States of America v. Blake Medical Center*, 2003 WL 21004734, *1 (M.D.Fla.2003)); see also *Lucibello v. Shamar Enterprises, LLC*, 2008 WL 686229, at *1 (M.D. Fla. Mar. 10, 2008)(Hon. Morales Howard).

Defendants have consistently ignored and violated this Court's Orders. Plaintiff previously filed motions to compel and for sanctions, including amended versions after each continued violation of this Court's Orders[1]. See (Doc. 49, 53, 60, 61, 64, 70, 73, 76, and 78). Plaintiff's prior motions related to discovery violations and failures to comply with this Court's Orders in

---

[1] Some of these motions to compel remain pending. Plaintiff does not waive any of the claims or relief sought in those motions by filing this relief. To the extent this Court grants the requested relief herein, some of those motions may be mooted.

3

connection therewith. Under Federal Rule Civil Procedure 37 this Court may sanction a disobeying

party by "(vi) rendering a default judgment against the disobedient party." Plaintiff's prior motions

for sanctions did not fully seek default judgment, and instead sought a lesser sanction available

under the Rules and available within the Court's discretion.

> "It is well established that the district court has authority to dismiss or to enter
> default judgment, depending on which party is at fault, for failure to prosecute with
> reasonable diligence or to comply with its orders or rules of procedure." Indeed,
> where a party demonstrates bad faith, district courts possess the inherent power to
> impose such sanctions "in the interest of the orderly administration of justice." " 'A
> party ... demonstrates bad faith by delaying or disrupting the litigation or hampering
> enforcement of a court order.' " *Sunshine Jr. Stores*, 456 F.3d at 1304 (quoting
> *Byrne v. Nezhat*, 261 F.3d 1075, 1121 (11th Cir.2001)). However, " 'because of
> their very potency, inherent powers must be exercised with restraint and discretion.'
> " Id. at 1305 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S.Ct. 2123,
> 115 L.Ed.2d 27 (1991))….Additionally, Rule 16(f) authorizes a court to impose
> sanctions "if a party or its attorney: ... fails to obey a scheduling or other pretrial
> order." Sanctions under this Rule are designed to "punish lawyers and parties for
> conduct which unreasonably delays or otherwise interferes with the expeditious
> management of trial preparation." *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th
> Cir.1985). A court may impose the same sanctions under Rule 16(f) that are
> permitted for discovery violations under Rule 37(b)(2)(A) (ii)-(vii). See Rule 16(f).
> Thus, a court is authorized to render a default judgment against a party that fails to
> comply with the court's pretrial orders. See Rule 16(f); Rule 37(b)(2)(A) (vi)…..

*Textron Fin. Corp. v. RV Having Fun Yet, Inc.*, 3:09CV2-J-34TEM, 2010 WL 1038503, at *4

(M.D. Fla. Mar. 19, 2010)(some citations omitted)

Now, with the new violation of this Court's Order [Doc. 78] which required Defendant's

to obtain new counsel or to indicate Defendant's plan to proceed, Plaintiff seeks entry of default

judgment. Defendants' excuse of COVID 19 and late filed motion for extension of time [Doc 79],

is hollow in light of the continued violations of other Court Orders.

> "The failure of an artificial entity to obtain counsel, in violation of a court order or
> rule to do so, has repeatedly been held to support default judgment, even absent
> violations of other rules or orders." *CNH Capital Am., LLC v. Se. Aggregate, Inc.*,
> No. 608CV027, 2009 WL 2391242, at *2 (S.D.Ga. Aug.4, 2009) (quoting Am. Res.
> Ins. Co., 2008 WL 4701350, at *3). Here, although RV Fun's failure to obtain
> substitute counsel alone is likely sufficient, it is not the sole basis warranting the
> entry of default in this matter. See id. Indeed, the record also shows that RV Fun

4

failed to comply with the Magistrate Judge's discovery Order, and never provided
a sufficient reason for its failure to do so.

*Textron Fin. Corp. v. RV Having Fun Yet, Inc.*, 2010 WL 1038503, at *5 (M.D. Fla. Mar. 19, 2010)

As noted during the deposition of Defendants' corporate representative, Adam Levin: "I am the executive chairman of the parent company Hightimes Holding, which Trans-High Corporation is a subsidiary of." [Doc 61-3, depo transcript p.13]. Defendant High Times Holding Corporation is regulated by the U.S. Security and Exchange Commission and regularly files reports with the SEC.[2] Defendant Hightimes Holding Corporation has approximately 300 employees and Defendant Trans-High Corporation has at least 100 employees. [Doc 61-3, depo transcript pages 54-56]. In light the sheer size of these entities, it strains the imagination how they could not be expected to hire counsel. Regardless, any alleged reasons for failing to obtain counsel should not excuse the continued pattern and behavior of violating this Court's Orders.

**Default Judgment for Breach of Contract**

The Court may enter a default judgment after a determination of having appropriate jurisdiction and that there is an adequate claim for which relief may be granted. This Court previously determined that subject matter jurisdiction was appropriate. [Doc. 20]. Regarding the adequacy of the claim at issue, the record already establishes Defendants' liability and Plaintiff's entitlement to relief. This Court has diversity jurisdiction as to the parties, since the Plaintiff and Defendants citizenship and primary place of business are not in the same state. Plaintiff is a citizen of Puerto Rico for purposes of diversity and Defendants principal place of business is 2110 Narcissus Ct., Venice, CA 90291.

---

[2] See public SEC report filings website https://www.sec.gov/edgar/browse/?CIK=1714420&owner=exclude  (Last accessed August 8, 2021). This Court can take judicial notice of these public SEC filings.

Plaintiff has patiently waited for more than a year-and-a-half to enforce this domain purchase contract. "Under Florida law, a breach of contract claim 'requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach.' To prove the existence of a valid contract, a plaintiff must plead facts showing the following: '(1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms.'" *Salem v. City of Port St. Lucie*, 788 Fed. Appx. 692, 697 (11th Cir. 2019)(citing *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009).

The facts are straight forward and clearly part of the record. On or about December 27, 2019 Plaintiff negotiated a deal to purchase the Domain Name <420.com> from Defendants for $307,500.00. [Doc. 1, ¶8, 13 and 1-2]. The disputed domain is registered to Defendant Trans-high Corporation and is currently registered with domain registrar Network Solutions. [Doc. 1, ¶9]. Network Solutions is located in this district, and therefore the situs of the domain registration contract, and by the express terms thereof [Doc. 1-1] is in this district. Plaintiff entered into a written agreement for the sale of the disputed domain through direct messaging communications including the Whats App messaging platform with Adam Levin, the Executive Chair of Defendant High Times Holding Corporation. [Doc. 1, ¶10, and Doc. 1-2, see also Doc. 61-18 p.2]. There was a clear offer and acceptance of the essential terms of the contract. In fact, prior to and after Levin sent the wire information to Plaintiff for payment, Plaintiff sought and received written confirmation of the terms. *Id*. Levin, as Executive Chair of High Times Holding Corporation, had authority to enter into such an Agreement for High Times Holding Corporation and its subsidiary Trans-high Corporation for the sale of the disputed domain. [Doc. 1, ¶11]. Since the beginning of the communications with Plaintiff, Levin has been and remains the CEO, as shown in public New York State corporations filings. [Doc. 61-17].

6

As CEO of Trans High Corporation, the entity who possessed the disputed domain, Levin had actual authority to enter into the purchase or sale of business assets, including the disputed domain. Further proof of Mr. Levin's authority came in the form of his consummating the sale of the domain, and the contract, when Levin provided Plaintiff with the wire instructions for the money for the sale of the domain. [Doc. 1, ¶12 and 1-2, p.3]. Relying on Mr. Levin's confirmation and information, Kauffman promptly wired the agreed amount of $307,500.00 to the account of the parent company Defendant High Times Holding Corporation to purchase the disputed domain. [Doc. 1, ¶13 and 1-2, p.3-5]. This significant sum of money clearly satisfies the requirement for consideration. Plaintiff fully performed his payment obligation under the Agreement established with Levin on behalf of Defendants. [Doc. 1, ¶14 and 61-3, Levin Depo pg 143 LL 1-20]. Defendants High Times Holding Corporation and Trans-high Corporation materially breached the contract by refusing to transfer the domain. [Doc. 1, ¶16]. Defendants have never turned over the domain, resulting in a material breach and causing harm and damage to Plaintiff, since Defendants have held the $307,500 during this 18-month timeframe period as well without transferring the domain name to Plaintiff's productive use.

Through his position, title and his express communications and actions, Mr. Levin had authority to enter into this contract and sell the disputed domain. "As to acts in the ordinary course of business, courts have consistently recognized that a presumption of authority exists in the case of acts made or done by presidents." *Cambridge Credit Counseling Corp. v. 7100 Fairway, LLC*, 993 So.2d 86, 90 (Fla. 4th DCA 2008) (alteration added, citation omitted); see also *Pan–American Constr. Co. v. Searcy*, 84 So.2d 540, 544 (Fla. 1955) ("We have held that in a proper case the signature of the president of a corporation may bind the corporation, under the doctrine of inherent powers."). Stormy Simon, the former Board of Directors member and CEO

of parent company High Times Holding Corporation, provided deposition testimony further

confirming the authority and power of Levin to act and enter into this transaction. (See Exhibit 1,

Deposition of Stormy Simon, pp. 26-27, 35-36).

This is a simple breach of contract case, and the above details all the required elements to

assert and substantiate such a claim. Given Defendants continued violations of Court Orders, and

these above detailed facts, no lesser sanction or action by the Court is appropriate, and a default

should be entered against Defendants.   The Defendants' behavior is consistent with a belief that

their position has no merit, and thus have abandoned any serious effort at litigating this dispute

beyond perfunctory efforts to simply delay the inevitable result.

### Permanent Injunctive Relief

"A plaintiff seeking a permanent injunction must satisfy a four-factor test before a court

may grant such relief. A plaintiff must demonstrate: (1) that he has suffered an irreparable injury;

(2) that remedies available at law, such as monetary damages, are inadequate to compensate for

that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a

remedy in equity is warranted; and (4) that the public interest would not be disserved by a

permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S.Ct. 1837,

164 L.Ed.2d 641 (2006).

Plaintiff is without an adequate remedy at law because the bargained for transfer of the

registration of the domain name 420.com, which is an inherently unique and rare domain name.

The domain 420.com represents a small and special subset of domains, such that damages alone

cannot adequately compensate for Defendant's misconduct. There are only 46,656 possible three

letter and/or number domain combinations and every single .com three letter/number domain is

currently registered by someone. Even more rare are the three-digit number domains, which reflect only 1,000 possible combinations. The high demand and public value of a three-digit number domain is immense and unmeasurable. For over a year and half, Plaintiff has been unable to use or exploit 420.com. Money damages alone cannot compensate Plaintiff since it is unable to secure a comparable substitute performance of a domain. For all of these reasons, prongs 1 and 2 are satisfied, wherein Plaintiff has suffered irreparable injury whereby monetary damages alone are insufficient.

In disputes involving intangible assets courts often consider domain names and telephone numbers as analogous. *S. Grouts & Mortars, Inc. v. 3M Co.*, 2008 WL 11333151, at *3 (S.D. Fla. Apr. 29, 2008); *MailPlanet.com, Inc. v. Lo Monaco Hogar, S.L.*, 2007 WL 9698307, at *1 (S.D. Fla. Dec. 17, 2007), aff'd, 291 Fed. Appx. 229 (11th Cir. 2008); *Fischer v. Forrest*, 2017 WL 2992663, at *23 (S.D.N.Y. July 14, 2017), report and recommendation adopted, 286 F. Supp. 3d 590 (S.D.N.Y. 2018), aff'd, 968 F.3d 216 (2d Cir. 2020); *Borescopes R U.S. v. 1800Endoscope.com, LLC*, 728 F. Supp. 2d 938, 947 (M.D. Tenn. 2010). It is therefore expected that the compelled transfer of through specific performance of a contract has been held by Courts. "'The purpose of specific performance is to compel a party to do what it agreed to do pursuant to a contract.' Accordingly, the undersigned finds that Plaintiff is entitled to a decree of specific performance ordering that Defendant surrender to Plaintiff the telephone numbers and the facsimile number." *PuroSystems, Inc. v. Maclean*, 2012 WL 13133869, at *6 (S.D. Fla. June 18, 2012)(quoting *Anthony James Dev., Inc. v. Balboa Street Beach Club, Inc.*, 875 So. 2d 696, 698 (Fla. 4th DCA 2004)).

It is within the Court's power to Order the Registrar or Registry of the disputed domain to transfer the domain on Defendants' behalf, or to divest Defendants of their interest, pursuant to

9

Federal Rule of Civil Procedure 70(b). No difficult or extraordinary measures need be taken for the Court to ensure that an order of specific performance is carried out. In sum, Plaintiff has shown actual success on the merits. Defendants breached the Contract by not conveying the domain, and the equitable considerations support the Court's discretionary award of specific performance through injunctive action in this case. The balance of hardships thus weighs in favor of Plaintiff, especially in light of the fact that Defendants have held the $307,500.00 since the day the contract was created between the parties. Moreover, the continued violations of Court Orders by Defendants should weigh against any continued equity that Defendants might claim in this matter. The transfer of the domain to Plaintiff also serves the public interest, so as to dissuade others from violating Court Orders. Defendants' violations of Court Orders is pervasive in this case, and must be used as an example. For all these reasons, the entry of a permanent injunction through the transfer of the domain 420.com to Plaintiff is warranted.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order of default judgment against Defendants specifically

(1) entering judgment against Defendants on the issue of liability for breach of contract;

(2) a permanent injunction, ordering that the Subject Domain Name <420.com> should be immediately transferred by Defendants, its assignees and/or successors in interest or title, and the Registrar(s) to Plaintiff's control. To the extent the current Registrar(s) do not facilitate the transfer of the domain names to Plaintiff's control within five (5) days of receipt of this Court's default judgment, the Registries shall, within twenty (20) days, change the Registrar of Record for the Subject Domain Name to a Registrar of Plaintiff's choosing, and that Registrar shall transfer the Subject Domain Names to Plaintiff;

10

(3) reserve determination of Plaintiff's monetary damages, attorneys fees and costs for supplemental briefing.

**<u>Local Rule 3.01(g) Certification</u>**

Pursuant to Local Rule 3.01(g), I hereby certify that since the undersigned counsel has attempted to confer with the opposing parties, and counsel for Defendants has stated that "My clients don't communicate with me but I can't imagine why they would agree to the entry of default." Counsel for Defendants has not clarified Defendants position since that correspondence other than filing Defendants motion for extension of time.

August 11, 2021                         Respectfully Submitted:

*/s/Darren Spielman*
Darren Spielman, Esq. (FL Bar No 10868)
DSpielman@Conceptlaw.com
Robert C. Kain, Jr., Esq. (FL Bar No. 266760)
RKain@Conceptlaw.com
The Concept Law Group, P.A.
6400 N. Andrews Ave., Suite 500
Fort Lauderdale, Fl 33309
ph: 754-300-1500
fax: 754-300-1501
*Counsel for Plaintiff*

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 11, 2021, that the foregoing document is being filed via ECF and served this day on all counsel of record identified below on the Service List via ECF email.

By:     /s/ *Darren Spielman*
         Darren Spielman


THE BEHAR LAW FIRM, P.A.
*Attorneys for Defendants*
3323 N.E. 163rd Street, Suite 402
North Miami Beach, FL 33160
Tel: (786) 735-3300
Fax: (786) 735-3307
hrb@beharlegal.com
sms@beharlegal.com
np@beharlegal.com