UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MERLIN KAUFFMAN,
an individual,

    Plaintiff,

v.                                                      CASE NO. 3:20-cv-17-MMH-JBT

TRANS HIGH CORPORTATION, a New
York company and HIGH TIMES HOLDING
CORPORATION, a Delaware company

    Defendants.
_____/

### RESPONSE TO ORDER
### AND MOTION FOR LEAVE TO FILE
### A MOTION FOR SUMMARY JUDGMENT

    Defendants Trans High Corporation and High Times Holding Company (collectively, "Defendants") provide the following response to the Order to Show Cause [DE 64], Motion to Compel [DE 76], and Motion for Default [DE 81]; and also seek leave to file a motion for summary judgment. As shown below, Defendants' comparative cooperation throughout the discovery process and the clear lack of merit in Plaintiff's case constitutes sufficient cause to avoid sanctions under Federal Rule of Civil Procedure 37(a)(5)(A).

### FACTUAL BACKGROUND

    1.   This lawsuit arises from a nonexecuted agreement negotiated by Adam Levin on behalf of Defendants and Plaintiff on behalf of Trellian Pty Ltd ("Trellian"). Critically, Plaintiff is not a party to this agreement. Plaintiff invokes Florida law to govern the unexecuted contract. *See* Compl, ¶ 1 [DE 1].

1

2. On Friday, December 27, 2019, Plaintiff Merlin Kauffman discussed with Defendants' Chairman, Adam Levin, the preliminary terms of the sale of the domain 420.com. This discussion transpired exclusively via text message, voicemail, phone calls, and the messaging communications platform WhatsApp. A copy of the WhatsApp transcript as produced by Plaintiff is attached as Exhibit A and incorporated by reference. Over WhatsApp, Mr. Levin and Plaintiff reached a preliminary purchase price, and Mr. Levin provided wiring instructions to Plaintiff. Ex. A, 343-344.[1] Roughly half an hour later, Mr. Levin and Plaintiff agreed that a written agreement would follow:

> Mr. Levin: Happy to sign an agreement or anything you need.
> Plaintiff: Not worried abt [*sic*] it

*Id.* at 339.

3. The next day, Mr. Levin stated to Plaintiff: "I'm having a board call to approve transaction as well. I'll need a contract as well. As we're a public company." *Id.* at 347.

4. On Sunday, December 29, 2019, Plaintiff asked: "All good to go with resolutions? Board approval etc" *Id.* Throughout the day, the Plaintiff and Mr. Levin continued to discuss the details of the possible sale, including Plaintiff's request for a confidentiality provision. *Id.* at 348. Plaintiff expressly disclaimed himself as a party to the purchase agreement when he stated: "Actually for PA, use name: Trellian Pty Ltd since it is wiring … party." *Id.* at 349.

5. Mr. Levin then sent an unexecuted purchase agreement to Plaintiff. *Id.* at 351. Mr. Levin and Plaintiff continued to discuss. Plaintiff asked for "redline," and Mr. Levin replied, "[s]end back if any today." *Id.* at 352. Plaintiff then asked for a phone call back. *Id.* But ultimately, nothing happened. No redline was returned. No papers were signed.

6. It was not until December 30, 2019 that Defendants received any payment from Plaintiff.

---

[1] Page references are to the Bates numbers provided by Plaintiff.

## PROCEDURAL HISTORY

7. On November 20, 2020, Plaintiff requested documents "relating to or reflecting payments from Plaintiff to" Defendants (RFP No. 2) and documents that "reflect, refer or relate to monies received" by Defendants from Plaintiff (RFP 10) and "relating to or reflecting payments from Plaintiff."

8. On November 24, 2020, Defendants responded to Plaintiff's documents by producing a transcript from WhatsApp showing Mr. Levin providing wiring information to Plaintiff. Defendants did not object to the request itself, and in a show of civility, specifically identified the precise pages responsive to each of Plaintiff's discovery requests. A copy of Defendants' responses to Plaintiff's request for production is attached as Exhibit B and incorporated by reference.

9. Plaintiffs did not extend the same courtesy to Defendants. Defendants made a similar request to Plaintiff which Plaintiff objected to as irrelevant. Specifically, in Request for Production No. 6, Defendants requested "Any and all documents in any way pertaining to monies sent by You to one or both of the Defendants." On February 5, 2021, Plaintiff responded with the following objection:

> In addition to the General Objections, Plaintiff objects to this Request to the extent that it is vague, ambiguous, and is not reasonably calculated to lead to admissible information in this matter or time and is not reasonably calculated to lead to admissible information in this matter in connection with a claim, cause of action, or affirmative defense …

A copy of Plaintiffs' response is attached as Exhibit C and incorporated by reference.

10. Lest Plaintiff attempt to argue some contrived distinction between "pertaining to" and "relating to," Plaintiff has taken the same position in "relating to" discovery phraseology.

11. On February 5, 2021, Plaintiff produced documents in response to Defendants'

discovery requests. Documents produced by Plaintiff show that as early as February 5, 2021, Plaintiff possessed the very documents subject to Plaintiff's Motion to Compel: senior lender document, stock purchase agreements, available to the public through the Securities and Exchange Commission website. Plaintiff's produced documents consist of public Securities and Exchange Documents with publicly accessible links to senior lender documents. Bylaws are publicly available as well. *See* https://www.sec.gov/Archives/edgar/data/1714420/000121390018000900/f1a2018ex2-2_hightimes.htm (accessed Sept. 23, 2021).

12. On March 26, 2021, Adam Levin as corporate representative of Defendants testified for five hours and thirty-five minutes. A copy of the transcript is attached at Exhibit D and incorporated by reference.[2] Mr. Levin provided specific testimony in each of the five topics that is subject to Defendants' Motion to Compel and Motion for Default.

    a. **Deposition Topic 2: Agreements and/or contracts, including any modifications thereof, between Defendant [*sic*] any third party in the last five years to purchase or sell any domain names owned or controlled by Defendant**. Since December 2019, the Subsidiary has owned the domain 420.com and is registered with GoDaddy. Ex. D., 44:2-13. Subsidiary also owns the domains hightimes.com, cannabiscup.com, and potentially other domains as well. *Id.* at 47:6-17. Mr. Levin may execute 100, "possibly" even 500 contracts in any given year. *Id.* at 121:3-14.

    b. **Deposition Topic 4: Identification of the Officers and Directors of Defendant.** Mr. Levin is the executive chairman of the High Times Holding Corporation ("Parent") and its subsidiary, Trans High Corporation

---

[2] The transcript will be cited in the following format: (page number):(line range)

4

("Subsidiary"). *Id.* at 13:9-18.[3] Mr. Levin was not the CEO of the subsidiary either at the time of the deposition or in January of 2020. *Id.* at 16:13-21. Parent currently consists of two directors: Mr. Levin and Peter Horvatch. *Id.* at 33:20-25; 34:1. In December 2019, Parent had four directors: Mr. Levin, Justin Ehrlich, Colleen Manley, and Stormy Simon. *Id.* at 34:6-25). Up to the beginning of 2020, Craig Fox served as the CEO of the parent, when he was succeeded by Stormy Simon, and then Peter Horvath. *Id.* at 35:15-15, 36:1-3.

c. **Deposition Topic 5**: **Authority of the Board of Directors and individuals Board Members to act on behalf of or to bind the Defendant(s), including but not limited to any bylaws and shareholder agreements.** Both Defendants have Bylaws. *Id.* at 37:9-16. Board approval is required for the transaction at issue in the Complaint. *Id.* at 94:3-7. Mr. Levin in fact goes to board to seek approval for "material contracts," but not necessarily for "nondisclosure agreements" or other issues where he feels "comfortable." *Id.* at 121:15-20. Material transactions requiring board approval include the purchase of assets and other transactions "out of the ordinary course of business." *Id.* at 121:21-25; 122:1-2.

d. **Deposition Topic 9: Structure, timing and methodology of Board of Directors meetings, including meeting minutes and communications (including e-mail, text, video calls, and phone calls) with Board members.** The Subsidiary[4] Board meets "as needed." *Id.* at 106:18-19. The Board had "two

---

[3] Mr. Levin's position with Parent is also easily ascertainable in dozens of public SEC filings. *See* https://www.sec.gov/cgi-bin/browse-edgar?company=Hightimes&owner=exclude&action=getcompany (accessed Sept. 23, 2021).

[4] Plaintiff counsel's last reference was to the subsidiary, so it is assumed that Mr. Levin's answers relate to the Board. *See* Tr. 9913-23. Any ambiguity with respect to distinctions between the Boards of the Subsidiary and the Parent is due to the failure of Plaintiff counsel to specify in his questions what he was referring to.

or three" meetings in 2020, and "approximately four" in 2019. *Id.* at 106:20-25; 107:1-3. However, only one in person board meeting occurred in 2020, with a video conference option for a member who "had a flight issue." *Id.* at 107:2-19

e. **Deposition Topic 15**: **Defendants' Computer Networks and Electronically Stored information.** Defendants' board members store information on their cell phones or computers. *Id.* at 25:11-13. Mr. Levin stores corporate communications on his cell phone rather than his laptop. *Id.* at 30:19-25; Tr. 31:1-4. However, neither Defendant provides board members with company owned electronic devices. *Id.* at 29:4-11.

13. On May 14, 2021, Plaintiff filed a Motion to Compel Deposition and Production. [DE 61]. Plaintiff represented that Defendant had not produced senior lender documents, but omitted the fact that Plaintiff was already in possession of the same documents.

14. On May 27, 2021, counsel for Defendants Howard R. Behar and Samuel R. Sheldon ("Departing Counsel") advised Defendants of their intent to withdraw. [DE 69, ¶4]. On June 11, 2021, Departing Counsel filed an unopposed motion to withdraw because "[i]rreconcilable differences have arisen." [DE 65]. Such irreconcilable differences interfered with the ability of Defendants and their counsel to communicate with one another about deposition dates, as shown in Mr. Behar's e-mail to Plaintiff's counsel one week later. [DE 76-1, p. 2 of 6]

15. On June 9, 2021, the Court entered its first and only order granting a motion to compel in this proceeding. [DE 64].

16. On June 24, 2021, Plaintiff filed an Amended Motion to Compel and For Sanctions [DE 73]. Just as he had the previous month, Plaintiff represented that Defendants failed to produce lender agreements but omitted the fact that Plaintiff already had public access to lender and shareholder agreements—and knew about the public availability agreements.

6

17. On July 1, 2021, Plaintiff filed a Second Amended Motion to Compel and For Sanctions For Violating Court Order. [DE 76]. The Motion incorporates as exhibits e-mails from Defendants' counsel showing that irreconcilable differences destroyed the ability to coordinate discovery: "My clients have been uncommunicative, and would likely not agree to a motion to compel." [DE 76-1, p. 2 of 6]. When Plaintiff represented that he had not received shareholder and lender agreements, he again failed to mention that he knew how to access the same documents that he was requesting.

18. On August 11, 2021, Plaintiff moved for default against Defendants as a sanction. By this time, Plaintiff knew how to access the documents he was seeking sanctions over for at least six months. In his Motion for Sanctions, Plaintiff acknowledges that "the record already establishes" sufficient evidence to fully adjudicate the matter on the merits. [DE 81 at p. 5]. Plaintiff continues: "The facts are straight forward and clearly part of the record." *Id.* at p. 6. Evidently, whatever information Plaintiff continues to seek through depositions and requests for production is not necessary for Plaintiff to fully prosecute his case on the merits.

19. In compliance with this Court's order granting motion to compel, on September 20, 2021 and again on September 23, 2021, Defendants produced documents subject to the Order to Show Cause [DE 64], Motion to Compel [DE 76]. Defendants also reached out to Plaintiff on September 20, 2021 to schedule the continued deposition of Defendants' corporate representative.

**MEMORANDUM IN RESPONSE TO ORDER TO SHOW CAUSE**

**I.   Any shortcomings in the discovery process are not egregious enough to justify the award of attorney fees, let alone default judgment.**

Sanctions against Defendants in favor of Plaintiff are not appropriate because Defendants cooperated in the discovery process more than Plaintiff. Plaintiff has simply been more aggressive in

seeking to enforce isolated instances of oversight in the midst of Defendants' change of counsel. With respect to the undersigned, Federal Rule of Civil Procedure 37(a)(5)(A) provides for sanctions against "the party or attorney *advising that conduct*, or both." (emphasis added). Because the undersigned was not retained during the time of the conduct at issue (and provided no advice prior to being retained), the undersigned should not be subject to sanctions pursuant to Rule 37(a)(5)(A).

As set forth below, Defendants' conduct in the discovery process has been sufficient to avoid the imposition of sanctions.

### A. Deposition of Corporate Representative

Rule 30(b)(6) does not require a corporate designee to "answer every question on a certain topic." *Fuentes v. Cruise*, 2020 U.S. Dist. LEXIS 202023. To be sanctionable, "the inadequacies in a deponent's testimony must be egregious and not merely lacking in desired specificity in discrete areas." *Taffe v. Israel*, No. 16-61595-civ, 2017 U.S. Dist. LEXIS 67613, at *5 (S.D. Fla. May 3, 2017) (quoting *Boland Marine & Mfg. Co., Inc. v. M/V Bright Field*, 1999 U.S. Dist. LEXIS 6964 (E.D. LA 1999). "Thus, a discovery violation does not necessarily occur under Rule 30(b)(6) when a designated witness adequately testifies with respect to certain subject matter but not others, especially where the witness is not expected to be omniscient nor expected to have computer-like memory." *Taffe*, 2017 U.S. Dist. LEXIS 67613, at *5-6. A corporate representative's participation in a six-hour deposition supports a finding that the corporate representative was adequately prepared. *See Boland*, 2017 U.S. Dist. LEXIS at *8 ("I find that Mr. Pau was adequately prepared and testified fully over the course of a six-hour deposition.")

Mr. Levin testified nearly as long in his deposition—five hours and thirty-five minutes. Throughout this time, Mr. Levin provided specific information on every topic he was examined on—just not at the level of detail or memory desired by Plaintiff. Mr. Levin's imperfections in memory and need to defer to counsel on the substance of legal documents is no basis to impose

8

sanctions, especially when such memory lapses may be cured by a review of publicly filed SEC documents. *See Taffe*, 2017 U.S. Dist. LEXIS at *5.

### B. Production of Financial Records

Although the "fact that a requesting party is already in possession of requested documents is not necessarily a sufficient reason to deny discovery," there are certain circumstances where it is. *Peter D Holdings, LLC v. World Oil Props.*, 17-cv-212, 2019 U.S. Dist. LEXIS 226671, at *16-17 (Wy. Dist. Ct. Oct. 23, 2019). In this proceeding, Plaintiff has acknowledged that financial records are "not reasonably calculated to lead to admissible information in this matter in connection with a claim, cause of action or affirmative defense." Ex. C. Defendants should not be faulted for acting in a manner consistent with Plaintiff's legal position.

### C. Production of Bylaws, Senior Lender Agreements, and Shareholder Agreements

Plaintiff never requested Bylaws, Senior Lender Agreements, and Shareholder Agreements in their requests for production. Instead, Plaintiff requested only documents that Defendants rely upon. Further, Plaintiff produced publicly available senior lender agreements to Defendant.

Defendants are justified in not producing publicly available documents because of several cases establishing that "there is no discovery obligation to produce documents in the public record that are equally available to both parties." *City of Colton v. Am. Prom. Events,* No. 09-1864 as consolidated, 2011 U.S. Dist. LEXIS 165601, at *222 (C.D. Cal. Nov. 28, 2011) (quoting *Tdata, Inc. v. Aircraft Technical Pubs.*, 2:03-cv-264, 2007 U.S. Dist. LEXIS 880, 2007 WL 433295, at *2 (S.D. Ohio Feb. 5, 2007)). Cases compelling discovery of publicly available records are distinguishable because they involve situations where the party moving to compel is not in actual possession of documents but instead must exercise "due diligence." *Ochoa v. Empresas ICA,* No. 11-23898, 2012 U.S. Dist. LEXIS 111177, at *15 (S.D. Fla. Aug. 8, 2012) ("Whether the documents are available to Plaintiffs through due diligence does not control."). The question in this proceeding is not an issue of "due

9

diligence" or which party can obtain records "more efficiently," but rather whether Plaintiff's actual possession of records obviates the need to produce identical documents. *See id. Colton, Tdata*, and cases cited therein support the position of Defendants that such production has always been unnecessary and not an absolute obligation on the part of Defendants.

Further, as set forth in Section II of this Response, Defendants need not rely on these documents. Because Plaintiff did not specifically request in his request for production Defendants' governing documents and agreements with nonparties, sanctions are not appropriate.

### D.     Delay in Compliance with June 9, 2021 Order

Defendants' delay in complying with the Order's requirements that Defendants produce certain records and make their representative available for deposition occurred in the midst of Departing Counsels' efforts to withdraw. Such delays attributable to the substitution of counsel should not result in sanctions. *See Gutting v. Falstaff Brewing Corp.*, 710 F.2d 1309, 1314-15 (8th Cir. 1983). For example, a party may justifiably delay responding to discovery when its attorney withdraws due to conflict of interest because in such circumstances, the party is left "without effective representation." *Id.* at 1314. This principal applies even when the culpable parties have been "careless with respect to their discovery obligations," and even when the attorney's motion to withdraw is not compelled by ethical considerations. *See Hydrotech, Inc. v. Bara Info,* 1:09-cv-00069, 2009 U.S. Dist. LEXIS 73783, at *16-17, 16 n. 8 (E.D.C.A. Aug. 10, 2009) (allowing withdrawal of admissions based on counsel's motion to withdraw arising from monetary dispute with client).

Defendants apologize for the delay in complying with the Order. However, Defendants' differences with Departing Counsel have frustrated their ability to adequately prepare for depositions and to ensure that they produced proper responses to Plaintiff's discovery requests.

10

### E.     Default Judgment Not Warranted

This Court has declined to enter default as a sanction in the face of farm more egregious conduct. *See, e.g. Morales v. Aldie's Certified Auto Body & Mech., Inc.*, No. 6:07-cv-1470, 2008 U.S. Dist. LEXIS 132185, at *6-7 (M.D. Fla. Oct. 17, 2008). *Morales* involved the wholesale failure to the defendant to respond to discovery requests and to appear for a properly noticed deposition. *See id.* Here, Defendants made some effort to produce the documents requested of them and subjected their corporate representative to a grueling five-and-a-half-hour deposition.

### II.    No Adequate Claim for Default

Plaintiff acknowledges that a default judgment can only be entered "after a determination of having appropriate jurisdiction and that there is an adequate claim for which relief may be granted." [D.E. 81, p. 5]. There are three reasons why Plaintiff has no adequate claim: Plaintiff lacks standing, there is no executed agreement, and the conditions precedent of the agreement have not occurred.

### A.     No Standing

Plaintiff's own documents show that Plaintiff would not have been a party to the abandoned deal Plaintiff complains of. Plaintiff specifically stated that he would not be individually wiring funds, and that therefore, he would not be a party to the purchase agreement.[5] Plaintiff specifically stated via WhatsApp:

> Actually for PA, use name: Trellian Pty Ltd
> Since it is wiring Perry
> Lol *wiring party.

"A rule of contract law is that one who is not a party to an agreement cannot enforce its terms against one who is a party." *Lawson v. Life of the South Ins. Co.*, 648 F.3d 1166, 1168 (11th Cir. 2011). "Thus, under the shareholder rule, a shareholder does not have standing to enforce the rights

---

[5] Indeed, this may explain Plaintiff's inability to provide records of payment. Plaintiff never actually paid for anything.

11

of a corporation, except when the shareholder also has a direct, personal interest in the cause of action." *eLandia Int'l, Inc. v. Ah Koy*, 09-20588-Civ-Moreno/Torres, 2010 U.S. Dist. LEXIS 53193, at *19 (S.D. Fla. Feb. 22, 2010). The shareholder rule precludes even a corporation's sole shareholder, officer, and director from pursuing a claim inuring to the corporation itself. *Id.* at 19-20 (citing *Rawoof v. Texor Petroleum Co., Inc.*, 521 F.3d 750 (7th Cir. 2008). When Plaintiff asked *not* to be on the purchase agreement and specifically stated that he personally would *not* pay directly, he relinquished any rights to enforce a WhatsApp text message exchange.

### B.     No Contract Execution

Because the WhatsApp exchange concluded with the transmission of a proposed unexecuted purchase agreement, there was no meeting of the minds to create an enforceable contract. "If either party communicates an intent not to be bound until he achieves a fully executed document, informal negotiations or verbal agreements will not constitute a binding contract." *Iotc Air v. V.*, 11-22861, 2012 U.S. Dist. LEXIS 203305, at *21 (S.D.F.L. Mar. 22, 2012) (quoting *Farango Advertising, Inc. v. Hollinger Int'l, Inc.*, 157 F. Supp. 2d 252, 258 (S.D.N.Y. 2001) (internal quotations omitted). Similarly, the Florida Supreme Court has consistently held that "[w]here parties intend that their verbal negotiations shall be reduced to writing as the evidence of the terms of their agreement, there is nothing binding on them until the writing is executed." *Rork v. Las Olas Co.*, 23 So. 2d 839, 842 (Fla. 1945) (quoting *Ocala Cooperage Co. v. Fla. Cooperage Co.*, 52 So. 13 (Fla. 1910)).

This rule applies to the instant proceeding because both Mr. Levin and Plaintiff expressly indicated that a written agreement would follow. In fact, it was Plaintiff putting forth a proposed draft agreement *after* negotiating the purchase price. Because neither Plaintiff nor Defendants executed the written agreement, there is no enforceable contract.

### C. Unsatisfied Condition Precedent

Even before Mr. Levin and Plaintiff decided that Trellian—rather than Plaintiff, would be the contracting party, Mr. Levin informed Plaintiff that execution required Board approval: "I'm having a board call to approve transaction as well. I'll need a contract as well. As we're a public company." Even if Mr. Levin had actual authority (he does not) or apparent authority (expressly disclaimed), Mr. Levin and Plaintiff agreed to a condition precedent—board approval—that was never satisfied. Plaintiff acknowledged that board approval was a condition precedent when he asked, "All good to go with resolutions? Board approval etc."

When a contract requires board approval as a condition precedent, and board approval is not granted, there is no enforceable contract—even if board approval is withheld in bad faith. *See Southern Internet Sys. v. Pritula*, 856 So. 2d 1125, 1127 (Fla. 4th DCA 2003) (holding that trial court could not enforce settlement agreement regardless of whether board of directors acted in bad faith). This is because "[a] written document, complete on its face and delivered to one of the signatories, does not become an enforceable contract if it was delivered to a condition or with a reservation until that condition is satisfied. *Id.* (quoting *Carson v. Fishtail Marine of Naples, Inc.*, 697 So. 2d 1222 (Fla. 2d DCA 1997)); *accord Harrell v. Wood & Assocs. Of Am., Inc.*, 351 B.R. 221, 243 (Bankr. M.D. Fla. 2006) (citing *Southern*, 856 So. 2d at 1128) ("Where provisions of a contract require approval of that contract by a third party, the obligations under such contract do not mature until after the approval has been given and no contract is fully formed."). As a result, the enforceability of the purported "contract" has not vested.

### MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE MOTION FOR SUMMARY JUDGMENT

Defendants request the opportunity to make similar arguments in support a motion for summary judgment. The three-month transition period between Departing Counsel's request to

withdraw and the appearance of the undersigned, combined with the need for the undersigned to become familiar with this case constitutes good cause to extend the deadline to file a motion for summary judgment. *See Johnson v. Sea Court Mgmt., LLC*, 2:15-cv-329, 2016 U.S. Dist. LEXIS 19670, at *3 (M.D. Fla. Feb. 18, 2016)).

WHEREFORE, it is respectfully requested that:

1) It be determined that Defendants have shown cause in response to the Order to Show Cause [DE 64];
2) Sanctions not be entered against Defendants and undersigned counsel;
3) Plaintiff' Second Amended Motion to Compel and For Sanctions For Violating Court Order [DE 76] be denied;
4) Plaintiff's Motion for Default [DE 76] be denied;
5) Defendant's Motion for Leave to File a Motion for Summary Judgment be Granted;
6) Defendants be permitted fourteen days from the date of entry of order disposing of such motion to file a motion for summary judgment.

Respectfully submitted,

_/s/ Jesse Haskins_____
Jesse A. Haskins
Fla. Bar No. 78974
Jesse@jhaskinslaw.com
J Haskins Law, PA
10437 Canary Isle Drive
Tampa, Florida 33647
Telephone: (919) 667-4689
Attorney for Defendants

**CERTIFICATE OF SERVICE**

I certify that on September 23, 2021, the foregoing documents have been furnished by e-portal to Concept Law Group, PA, 6400 N. Andrews Ave., Suite 500, Ft Lauderdale, FL 33309; (754) 300-1500; rkain@complexip.com and DSpielman@ConceptLaw.com and The Behar Law Firm, PA, 3323 N.E. 163rd Street, Suite 402, North Miami Beach, FL 33160; (786) 735-3300; hrb@beharlegal.com and sms@beharlegal.com.

/s/ Jesse Haskins
Jesse A. Haskins
Fla. Bar No. 78974
Jesse@jhaskinslaw.com
J Haskins Law, PA
10437 Canary Isle Drive
Tampa, Florida 33647
Telephone: (919)667-4689
Attorney for Defendants