UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

MERLIN KAUFFMAN, an individual,  CASE NO:  3:20-cv-17-MMH-JBT

      Plaintiff,

v.

TRANS HIGH CORPORATION, a New
York company and HIGH TIMES HOLDING
CORPORATION, a Delaware company,
      Defendant.

                                          /

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO TERMINATE THE CONTINUED DEPOSITION

Plaintiff, Merlin Kauffman (the "Plaintiff"), by and through undersigned counsel, and pursuant to Federal Rules of Civil Procedure, hereby files his Response to Defendants' Motion to Terminate the Continued Deposition (Doc. 96), and states as follows:

This should have been a simple and straightforward case. However, Defendants are on their third set of attorneys and have continued to obstruct, block and delay the orderly discovery efforts of Plaintiff. In yet another stunt, Defendants abruptly and without proper legal basis stopped the Court Ordered continued deposition of the corporate representative of both corporate Defendants. They now seek ratification from this Court of such unwarranted and abrupt cancellation.

### A) The Deposition Length has been Reasonable

The Defendants motion improperly claims that during the first March 26, 2021 deposition Defendants "testified extensively as to all topics listed in the

Notice of Taking Deposition." (Doc. 96, p1-2¶2). Indeed, such a claim is directly contradicted by this Court's Order compelling the continued deposition. (Doc 64 and 60). Defendants' motion also inaccurately suggests that the Court Ordered continued deposition lasted 2.5 hours (Doc 96 ¶6), but the actual record demonstrates that it lasted less than 2 hours (Exhibit A, November 2, 2021 Continued Deposition Transcript of Adam Levin).

In fact, 45 minutes in to the continued deposition, Mr. Levin demanded that a break be taken (while a question was pending). This demand occurred immediately after Mr. Levin asked his attorney if there was attorney client privilege available to assert against a basic question about whether Mr. Levin was the CEO of Defendant Trans High Corporation during the time period in question. (Exhibit A, p33-35). From that point forward after returning from the abrupt break, the entire approach of Defendants and their counsel changed. In fact, Defendants' Motion admits that during the break Defendants and their counsel discussed the alleged 7-hour time limit position. (Doc 96 ¶8) This makes clear that Defendants did not like the line of questioning during the first 45-minutes, and decided to abandon their prior commitment to go for a longer period of time after a late 2:30 pm EST start time. As noted during the November 4, 2021 hearing before this Court, there was an unmistakable understanding and agreement between the parties that this deposition could go late, all of which was memorialized in emails

exchanged between counsel before the commencement of the continued deposition. *See* (Doc. 98-1).

Despite Defendants' sudden position, it is patently unfair to suddenly suggest that Plaintiff was limited to less than 2-hours to conduct the **court ordered** and **combined** deposition of the corporate representatives of **both** corporate Defendants. Indeed, had Plaintiff or its counsel been flippant and not cared about ensuring discovery efficiencies, Plaintiff could have technically insisted on taking upwards of 14-hours' worth of depositions, as there exists two separate corporate defendants in this litigation. *See Wimber v. Stuart Lumber Company of Ft. Myers , et al.*, Case No. 00-6815-CIV-FERGUSON/SNOW (S.D. Fla. June 29, 2001)("The rules permit plaintiff to depose each defendant for seven hours.") To be clear, and despite the inaccurate representations by Defendants that the prior deposition lasted 5.5 hours, (*see* Doc 96 ¶2), it is unequivocal that Plaintiff conducted the original Deposition for a total of 3 hours and 50 minutes of actual question/answer period. (*See* Doc 61-3). Therefore, at worst, Defendants would have to sit for at least 3 more hours. In reality though, Plaintiff's original deposition time would reasonably have been extended in light of the Defendants' failures to have a witness who was prepared to answer basic corporate questions. It would be significantly unfair for Defendants to avoid answering questions at a first deposition, and then after the Court Ordered continuation, use the 7-hour rule to handicap Plaintiff even more. If such absurdity were the rule, it would quickly

become another unfortunate litigation strategy to obstruct as long as possible in a first deposition, only to be able to later strategically limit the total substantive questioning once the deposition is forced to reconvene at a later date.

Plaintiff rescheduled and reset the Court Ordered continued deposition in a joint fashion for efficiency purposes and should not have been limited to 7 hours in the first instance. While Plaintiff does not envision (nor does Plaintiff request) the full 14 hours, there can be no mistake that 7 hours is woefully inadequate under the present circumstances and history of Defendants' obstruction. Again, the undersigned even confirmed in writing and by phone about the timing logistics of the continued deposition, and defense counsel never came close to ever suggesting that Defendants would seek to involve a temporal limitation to the Court Ordered deposition; to the contrary, defense counsel actually made clear that Defendants envisioned the Court Ordered deposition continuing past normal business hours. (*see* Doc. 98-1, email between counsel on scheduling deposition and timing). Make no mistake, had Defendants ever raised the 7-hour issue prior to the Court Ordered continued deposition, Plaintiff would have immediately sought this Court's intervention. Instead, Plaintiff was sandbagged during the deposition with this clear deviation and unfair tactical maneuver that followed a break where defense counsel conferred with the deponent during the deposition.

Through this change in position regarding the timing of the Court Ordered continued deposition Defendants have improperly added wording to this Court's

4

Order (Doc. 64), and such behavior should not be tolerated. Defendants ended the deposition based solely on a time limit claim (Exhibit A, p.76-77) after less than 1.5 hours of total time, including the breaks. Again, Plaintiff should have been entitled to much longer, especially considering that this was a Court Ordered continued deposition for Defendants prior failures to prepare and answer questions.

In support of this timing issue, Defendants improperly claim that Plaintiff's questioning made no distinction between Hightimes Holding Corporation and Trans High Corporation. (Doc 96 ¶7). A basic reading of the index of the transcript shows how disingenuous this claim is, but a full reading of the transcript makes clear that the questions were consistently targeted to each corporate Defendant. The index shows that on 33 pages of the transcript High Times Holding is specifically referenced and on 23 pages Trans High is specifically referenced.

The simple conclusion is that this time limitation assertion is a red herring designed to distract, delay and obstruct the continued orderly process of this proceeding, in direct contravention of the intent of this Court's Order.

## B) Defendants' Harassing Claim is Meritless and Unsupported

With passing reference Defendants' motion claims that they were instructed not to answer questions that Defendants' counsel claims were harassing. (Doc. 96 ¶ 10). However, there was no such legal support in the memorandum of law and the transcript itself actually shows that no such instruction occurred. Twice, counsel for Defendants instructed the deponent not to answer, based solely on an

alleged claim of privilege. (Exhibit A, p. 35 LL 19-25; p 37 LL 2-25, p.38 LL1-4). Only one instance during the deposition did counsel for Defendants reference or complain about the idea of the questions being harassing. (Exhibit A, p. 54-56) However, as explained below, this was the result of Defendants refusal to comply with the Middle District Discovery Handbook. Defendants raise the issue of harassment and take an unsupportable position in the instant motion. Merely stating that counsel thinks the questioning was harassing does not magically turn it into such. The undersigned stands by the questions posed in the deposition. This Court Ordered continued deposition was video recorded, and Plaintiff will submit to the Court a digital copy of the recording if there is any doubt as to the nature of the questions.

### C) Violations of the Court Order

#### a. Incomplete deposition topics:

This Court previously Ordered Defendants to properly prepare for and answer questions on five (5) topics that they previously refused or were unable to discuss during the original deposition. (*See* Doc. 60, 64 and 61) During this Court Ordered continued deposition, Plaintiff was unable to address a few topics because Defendants improperly (and unilaterally) cut the deposition short. The next subsections of this brief detail each of the topics contained within this Court's Order compelling the subject deposition, and discusses whether Plaintiff was

afforded any meaningful opportunity to explore the subject topics at the court ordered continued deposition.

### i. Deposition Notice Topic No. 2

"Agreements and/or contracts, including any modifications thereof, between Defendant any third party in the last 5 years to purchase or sell any domain names owned or controlled by Defendant(s)."

This topic was not able to be discussed in any manner since the deposition was unilaterally cut short by Defendants' counsel.

### ii. Deposition Notice Topic No. 5

"Authority of the Board of Directors and individuals Board Members to act on behalf of or to bind the Defendant(s), including but not limited to any bylaws and shareholder agreements."

Plaintiff attempted to ask questions about this topic, but as shown on Deposition pages 50-56, Mr. Levin was not prepared or able to identify documents in response to this critical topic, unless he scrolled through every page of a tardily produced 7000+ page document production. (Exhibit A). This particular line of questioning surrounds the deponent's ability to identify the High Times Holding Corp's bylaws. (Exhibit A, p.49-56). As noted during the deposition and shown in the attached additional exhibit, Counsel for Defendants refused to provide a general scheme of recordkeeping. (Exhibit B Sept 23 email on discovery). Counsel for Defendants refused to provide an identification of certain groups of produced

7

documents with particular categories of the request to provide meaningful descriptions. (Id.) Plaintiff sought this information in advance of the deposition. Given the reality that Defendants tardily produced over 7000 pages of discovery without a legend or index, and without any organization, Plaintiff was forced to instead ask Mr. Levin to identify these documents.[1] The problem was further compounded when Counsel for Defendants' email response on September 23, 2021 noted that they would not provide any clarity regarding the 7000+ pages produced, and instead that the records are kept in the usual course of business, thus forcing Plaintiff to inquire of the production during the Court Ordered deposition.

Plaintiff was unable to determine in those 7000+ pages, the document that established the duties of the officers. Mr. Levin testified that according to the bylaws, as Executive Chairman of High Times Holding Corp, who is a board member, he "has some types of duties of an officer." (Exhibit A, p. 44 LL-9-18). Since there was no ability for meaningful review and questioning about these bylaws allegedly contained in the 7000+ pages, then this topic was not properly covered.

Moreover, Defendants took a position that Plaintiff's prior discovery responses did not specifically identify which responses related to which bates pages and requests. However, Plaintiff's prior production of 354 pages stands in

---

[1] This Court's Order compelled Defendants to produce all documents at issue in the motion by June 23, 2021, yet the 7000+ pages were not provided until September 20 (with improper Bates numbers) and then again on September 23.

stark contrast to the document dump of 7000+ pages produced by Defendants on the heels of the Court Ordered continued deposition, and which were produced pursuant to this Court's Order compelling supplemental production. Defendants never requested clarity on Plaintiff's production, and never conducted a single deposition, so it can hardly be heard to complain now. Indeed, Defendants never sought to meet and confer on this topic in any manner. Defendants' reliance on the "you-did-it-too" excuse is simply inappropriate given the contrasting realities, and the factual and procedural posture of this matter. This is exactly the type of interference and obstruction that has caused this relatively simple matter to devolve into multiple unnecessary discovery disputes.

Defendants' failure to clarify the discovery production is in clear violation of the Middle District of Florida Discovery Handbook section III(B)(4). (See https://www.flmd.uscourts.gov/civil-discovery-handbook/chapter03/b-procedures-governing-manner-of-production)   Plaintiff even provided such an explanation about the obligations from the handbook during the deposition. (Exhibit A p.55). As a result of Defendants gamesmanship and unpreparedness, Plaintiff was unable to reasonably ask questions about this topic, which is one of the central themes of the case.

This topic of bylaws, lender agreements, articles of incorporation, and shareholder agreements is an important aspect of the actual and apparent authority for Mr. Levin to contract for the sale of 420.com. During recent court

filings, Defendants have alleged that Plaintiff was in possession of these records. (Doc. 88) This is patently incorrect. Plaintiff produced approximately 275 pages of SEC documents, however, **not one** of those pages is the bylaws, certificates of incorporation or senior lender agreements. A simple math comparison of those 275 pages balanced against the document dump from Defendants of over 7000 pages belies Defendants' position.

A detailed explanation of the actual SEC documents produced by Plaintiff shows that Plaintiff was not in possession of the documents as follows: Plaintiff Bates 29- 71 (Annual Report from June 2019)(43 pages long), signed November 27, 2019; Plaintiff Bates 84-116 (Same June 30 Annual report), signed November 27 2019 (same document but no all pages); Plaintiff Bates 133 – 159 Form 1-u Filing January 31, 2020; and Plaintiff Bates 160 – 332 (January 2018 Stock offering docs). None of these documents produced by Plaintiff are the ones being sought from Defendants through the discovery process. Defendants' position that these documents were in Plaintiff's possession is simply wrong and disingenuous.[2]

### iii.  Depo Notice Topic No. 4

"Identification of the Officers and Directors of Defendant(s)."

---

[2] If the Court would like to review the discovery produced by Plaintiff, then Plaintiff will upload the 275 pages of SEC documents.

Defendants are still unable to fully answer questions regarding who the Officers of the specific companies were, especially during the relevant time in question. During the first deposition Mr. Levin was not prepared to answer these questions and used corporate counsel as an excuse. (Doc 61-3). Defendants second court ordered appearance at the continued deposition again violated the Middle District of Florida Discovery Handbook section II(A)(4) and (5) (see https://www.flmd.uscourts.gov/civil-discovery-handbook/chapter02/a-general-policy-and-practice).

During the Court Ordered continued deposition, Mr. Levin again used corporate counsel as an excuse, and expressly refused to provide an answer based upon a bogus claim of privilege. (Exhibit A, p. 33-34). One blatant example was Mr. Levin's initial claim that he may have been the CEO or may have been assumed to be making decisions. (Id.). It is a simple question of fact regarding who was the CEO of Trans High Corporation during the time period that Mr. Levin was communicating with Plaintiff. It is not a privileged communication. The same problem occurred for the identity of the CEO of High Times Holding Corp. (Exhibit A, p. 36-39).

Since this was not the first time this topic was noticed, and since Mr. Levin had more than adequate time to determine the answer, the failure to provide such answer is simply shocking. Instead, Mr. Levin continually asserted in house counsel as an objection or response. Additionally, Defendants' counsel for this

litigation asserted attorney client privilege and instructed Mr. Levin not to answer. Defendants cannot rely on the attorney client privilege objection, when they knew full well that they were required to answer this basic question. There has never been a "Defense of counsel" affirmative defense raised in this matter (Doc. 32 and 35), and the continued reliance on advice from corporate counsel as a sword and shield must end.

There was a pending question which remained unanswered. (Exhibit A p. 34 LL 11-13). Then Mr. Levin demanded a break and no further answer was provided. Considering the very clear issue of authority regarding Mr. Levin entering into the contract in dispute, this simple fact should not require so much effort. Defendants' motion is one to terminate the deposition and <u>not</u> a motion for protective order regarding any claimed privileged topics. Defendants' failure to file a separate motion for protective Order, and instead attempt to merge this topic into the termination motion shows a pattern of improperly combining motions. (See Doc. 92, fn2).

### iv.   Depo Notice Topic No. 9

"The structure, timing and methodology of Board of Directors meetings, including meeting minutes and communications (including email, text, video calls and phone calls) with board members."

Despite the Court's Order, Defendants have still never produced a single set of meeting minutes from a board of directors meeting for either corporate

Defendant. This remains a violation of the Court's Order. One of the Defendants additional supplemental discovery documents was a January 5, 2020 "High Times Holding Corp. Written Consent of a Majority of the Board of Directors in Lieu of a Special Meeting"(herein "Board Resolution)(Exhibit D, Defendants Bates 7034-7051). This resolution expressly stated that the resolutions "shall be filed in the minute book of the Company" and Mr. Levin confirmed during the deposition that this occurred. (Exhibit D and Exhibit A, p. 69 LL 6-11) When asked for company minutes to be produced Mr. Levin, claimed he wasn't a lawyer and thought they were stored with company counsel. (Exhibit A, p. 69-70) Just as stated in other sections, this is not a first-time topic with room for followup discovery. Defendants should not be allowed to hide behind a claim of corporate documents being in the possession of counsel. During the first deposition, Mr. Levin testified there was an in-person board meeting in January 2020. (Doc. 61-3, p 107-110, 115). This in-person board meeting in January 2020 is distinct from the January 5 resolution and therefore, Defendants remain non-compliant with regards to meeting minutes from that in-person meeting.

Another failure of Defendants' testimony and documents came in the form of emails between the members of the Board. As explained above there was a written Board Resolution passed on January 5, 2020. (Exhibit D). This Board Resolution specifically addressed the **retroactive authorization** by the Board for Mr. Levin to sell the domain 420.com. (Id.) The January 5 Board Resolution

includes a Hello Sign authentication email confirmation page. (Id.) Yet, Defendants have not produced a single email communication or text message in this case within either Defendant organization. There were certainly emails to the board members regarding this Hello Sign January 5 document. However, Mr. Levin testified that there were no emails discovered in the search when looking for emails between the board members.

From the early onset of this case Defendants refused to agree to an ESI protocol and this Court did not require them to do so, despite Plaintiff's objection. (Doc 38). The failure to produce a single email or text communication in 2021 is simply inexcusable. Defendants' initial disclosures, which have never been amended, expressly state that there are "communications between Adam Levin and Defendants' other board members." (Exhibit E). These requests are directly tied to Plaintiff's discovery request No. 7. (See Defendants' prior Request for Production Response No 07; Doc 61-11, p.3 and 61-12, p.3). During the first deposition, Mr. Levin testified that there were meeting minutes, but has not produced them. (Doc. 61-3, p.110).

Mr. Levin was also unable to identify what terms and words were searched for email communication between board members, after acknowledging that at least one additional email existed. (Exhibit A, p. 24 LL 17-25, p. 25 LL 1-11). Mr. Levin further confirmed that he communicated with the Board of Directors via email. (Exhibit A, p. 26 LL 18-21). Incredibly, Mr. Levin also testified that there

14

were emails about the 420.com domain between the board and counsel, yet there has <u>never</u> been a privilege log produced detailing how many emails, the date of the emails, or any indication whatsoever. (Exhibit A p 27, LL 17-27). In fact, when pressed on this topic, Mr. Levin expressly claims privilege. (Exhibit A, p. 30 LL 1-12). When asked about emails regarding the use of the domain itself, Mr. Levin stated he could not recall. (Exhibit A, p. 28-29).

### v.  Depo Notice Topic No. 15

"Defendant's computer networks and electronically stored information."

Defendants were able to provide some additional clarity on the ESI related to the corporate entities. However, Mr. Levin was not able to identify a number of simple topics with clarity or specificity. Again, this is not a first deposition with a few months left for additional discovery. This was a second Court Ordered continued deposition, and Mr. Levin was not prepared for some basic and targeted questions.

For example, Mr. Levin was unaware of the actual data deletion policy despite acknowledging that there was such a policy. (Exhibit A, p10). This is in direct contradiction to Defendants prior Request for Production Response No 15. (Doc 61-11, p.5 and 61-12, p.5). This is a continued pattern of claiming no documents existed in written discovery responses, then when pressed during deposition, admitting they exist but failing to provide them. Mr. Levin was unable to confirm if any emails or electronic communications have been deleted. Mr.

Levin was unable to reasonably identify the email structure. (Exhibit A, p11-13). Most disturbingly, Mr. Levin did not conduct a search with regards to the email address associated with any @420.com email address. (Exhibit A, p.13). When pressed on how many email addresses were associated with @420.com, Mr. Levin testified that they were less than five. (Exhibit A, p.14) As a result, there cannot be a reasonable explanation for the failure to conduct a search for these communications. These types of ESI records are directly contemplated and requested in the discovery requests.

### b) Document production and the resulting deposition testimony:

The Defendants also violated this Court's Order to Compel (Doc 64) by failing to produce the electronic financial records related to the wired $307,500 for the domain contract. During the first deposition, Defendants acknowledged that there were both bank records **and** internal Quickbooks records regarding the wired funds for the purchase of the disputed domain. (Doc 61-3 depo pg32 LL 7-20) After this Court's Order, Defendants provided a redacted single page screenshot of banking records showing the wiring of the funds. (Exhibit C, Bates p 00025). However, no Quickbooks records were produced. During the second deposition, Mr. Levin testified that he found those Quickbooks records, but was unsure if they were produced. Defendants did not and still, after this second deposition, have not produced those records. (Exhibit A, p 75 LL 19-25, p 76 LL 1-11). These Quickbooks records have information related to how the funds were

16

classified in Defendants' accounting records and may be relevant to identify that they are related to the authorized contract transaction.   (See Doc 61-3, depo p 145-146). Since Defendants have continually failed to produce financial records, Plaintiff has been prejudiced by not being able to conduct an appropriate deposition.

Plaintiff previously requested documents to support Defendants Affirmative Defenses. (Doc. 61-11 and 61-12, Request No. 11). This Court Ordered Defendants to "produce all documents at issue in the Motion without objection" (Doc. 64). Defendants Affirmative Defenses Nos. 1, 4, 5, 6, 7, and 8 all directly refer to and rely on the claim of authority and/or board approval. (Doc. 35) Plaintiff is not seeking the all-encompassing document production for every single Affirmative Defense, especially given the stage of this litigation. Instead, Plaintiff is seeking those documents which the Court clearly ordered and which the deposition transcript showed Defendants have still not produced. The Court's prior Order was not limited, yet Plaintiff is willing to narrow the requests to those encompassed in Affirmative Defenses Nos. 1, 4, 5, 6, 7, and 8. Moreover, Plaintiff remains unclear if the documents produced in the 7000+ document dump actually satisfied this Court's Order, since the deposition was cut short and Defendants corporate representative was unprepared to answer questions about them.

**D) Memorandum of Law**

17

Defendants' motion is silent as to the actual basis for the requested relief. The Motion does not cite to nor rely on Rule 30(c)(2) which states in pertinent part "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." There was no limitation ordered by this Court in connection with the Order on the Motion to Compel (Doc 64), which is being asserted by Defendants. The only alleged justification for the termination of the deposition is the so-called 7-hour rule claim by Defendants. As a result, Rule 30(d) applies. Defendants do not cite to this Rule, but the essence and reliance on the 7-hour time limit is consumed in Rule 30(d)(1) which states: "Unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours. The court must allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination." Absent and silent from Defendants arguments is the acknowledgement of the second sentence. The 7-hour rule is not rigidly kept, especially in light of Defendants continued efforts to impede and delay answering questions.

A closer look at Rule 30(d)(3) provides further guidance for this Court, and establishes the only grounds to move to terminate the deposition: "At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably

18

annoys, embarrasses, or oppresses the deponent or party." As a result, the 7-hour position is not a reason to terminate the deposition.

Defendants failed to present a corporate witness who was prepared to answer questions about the listed topics during the first deposition in March 2021, despite the fact that this Court issued an Order compelling Defendants to have a witness who was prepared. Failure to have a witness answer questions on topics, imposed an obligation for Defendants to present a substitute witness. *Compare to Regions Bank v. Legal Outsource PA*, 214CV476FTM29MRM, 2016 WL 11644387, at *2 (M.D. Fla. May 9, 2016) ("Here, the Court is satisfied that, to the extent the tendered corporate representative could not answer questions on certain topics, Plaintiff remedied the problem by immediately tendering additional witnesses to answer questions relating to those topics.").

 "[A] corporation does not satisfy its obligations under Rule 30(b)(6) by simply producing an unprepared designee. If the designated deponent is unable to answer questions regarding the subject matter as to which [he] was selected to testify about, the corporation has failed to satisfy the requirements of Rule 30(b)(6) and is subject to sanctions." *Kartagener v. Carnival Corp.*, 380 F. Supp. 3d 1290, 1294 (S.D. Fla. 2019). For the second time, Defendants have failed to present a witness with adequate information to answer questions about the topics which this Court ordered them to prepare for and testify about.

Rule 30(d)(2) provides for sanctions on any "person who impedes, delays, or frustrates the fair examination of the deponent." Without question, Defendants unilateral suspension of the deposition impeded, delayed, and frustrated this Court Ordered continued deposition.

Procedurally, discovery has all but ended, except for any additional discovery permitted by this Court for compliance with the prior Order. This is not a chance for Plaintiff to reasonably find out more information through additional discovery follow-up requests. The fact that Defendants have answered some questions, but remain evasive on nearly all topics is unacceptable, unreasonable, unfair and prejudicial.

WHEREFORE, Plaintiff respectfully requests that the Court deny Defendants' Motion Terminate the Deposition, to Compel the additional continuation of the deposition, to Compel the proper search and investigation of responsive documents, to Order Defendants to pay for Plaintiff's attorneys fees and for the costs of these continued depositions.

November 17, 2021                    Respectfully Submitted:

*/s/Darren Spielman*
Darren Spielman, Esq. (FL Bar No 10868)
DSpielman@Conceptlaw.com
Alexander D. Brown, Esq. (FL Bar No 752665)
abrown@conceptlaw.com
Robert C. Kain, Jr., Esq. (FL Bar No. 266760)
RKain@Conceptlaw.com
The Concept Law Group, P.A.
6400 N. Andrews Ave., Suite 500
Fort Lauderdale, Fl 33309

ph: 754-300-1500
fax: 754-300-1501
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on <u>November 17, 2021</u>, that the foregoing document is being filed via ECF which served same on all counsel of record identified below on the Service List via email.


By:     <u>/s/*Darren Spielman*</u>
          Darren Spielman

Jesse A. Haskins
Fla. Bar No. 78974
Jesse@jhaskinslaw.com
J Haskins Law, PA
10437 Canary Isle Drive
Tampa, Florida 33647
Telephone: (919)667-4689
Attorney for Defendants