UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MERLIN KAUFFMAN,
an individual,

    Plaintiff,

v.                                        CASE NO. 3:20-cv-17-MMH-JBT

TRANS HIGH CORPORATION, a New
York company and HIGH TIMES HOLDING
CORPORATION, a Delaware company

    Defendants.
_____/

## DEFENDANTS' REPLY

Defendants state the following in reply to Plaintiff's Response.

### I. Significance of Continued Discussion

The WhatsApp chat after the price haggle advances two alternative arguments. First, the continued discussion shows that there was no formal offer and acceptance, but merely an agreement between negotiators to discuss related items to a potential transaction. Even if a contract was formed, continued discussion shows that the parties agreed to unsatisfied conditions precedent.

### A. Continued Discussion to Show No Contract Formation

Plaintiff's request to "stop there," at the point in the WhatsApp chat most convenient for Plaintiff, is equivalent to requesting a "stop" in the middle of a formal contract. D.E. 117, at p. 10. Plaintiff's "stop there" also contradicts the Complaint's incorporation of the entire discussion into the purported "written

1

agreement." Complaint, ¶ 10 (incorporating "Agreement, Exhibit B"). Courts have recognized that continued discussion shows a lack of agreement: "Subsequent emails" and "bicker[ing] over the terms" show that "the parties were not in agreement." *TB Food USA, Ltd. Liab. Co. v. Am. Mariculture, Inc.*, 2:17-cv-9-FtM-29NPM, 2021 U.S. Dist. LEXIS 61745, at *15-16 (M.D. Fla. Mar. 31, 2021). Because there was no meeting of the minds, there was also "no acceptance." *Villareal v. Eres*, 128 So. 3d 93, 100 (Fla. 2d DCA 2013).

The chat in its entirety shows that the negotiators intended discussion of the payment amount (and wiring information) as an overture to further discussions with Defendants' boards. When Mr. Levin stated, "doesn't need to be signed," he referred to a "small contract." Later in the chat, Mr. Kauffman himself recognized that that no such contract had been agreed upon by asking for "redline." Immediately before Mr. Levin indicated "doesn't need to be signed" with respect to his never sent contract, Mr. Kauffman inquired about "resolutions" and "board approval etc." Mr. Kauffman's continuous negotiation of contract terms shows that the entire chat remained just that—a negotiation.

Most fatal to Mr. Kauffman's contract formation argument is the absence of agreement over what a purported "offer" would be in reference to. Mr. Levin referred to a "domain," but Mr. Kauffman later requested that "the Trademarks" be included in the potential sale. D.E. 112-2. If the situation were reversed, and Defendants transferred the domain only and sued for payment, Plaintiff would

likely point to the draft purchase agreement to show a lack of mutual assent over the items to be exchanged.

Plaintiff misconstrues his own expert report indicating that text messaging platforms constitute the basis for "negotiations" and "targeting" prospective "sales." D.E. 111-12, ¶ ¶ 19, 21. Plaintiff himself stated on WhatsApp that he has a "good PA" on hand, and throughout the chat, referred to a separate "PA" to be executed. D.E. 1-2, at p. 33. The chat in its entirety shows the parties understood the chat was an informal negotiation, with a formal "PA" to follow. Mr. Kauffman's consistent references to a "PA" refutes the notion that the parties had a prior meeting of the minds to execute a binding agreement. The chat in context shows that the parties never intended a price point haggle to constitute contract formation, just as in *Triton Stone Holdings, L.L.C., v. Magna Bus., L.L.C.,* 308 So. 3d 1002 (Fla. 4th DCA 2020), where the parties never intended a handwritten document to constitute contract formation. The "*skeletal*" nature of the exchange constitutes "conclusive evidence that the parties did not reach a binding contract." *Id.* at 1009 (emphasis in original).

**B. Continued Discussion As Condition Precedent.**

Plaintiff makes a key concession in his Response: "Plaintiff was willing to accommodate" Mr. Levin's requests for 1) board approval[1] and 2) a formal

---

[1] It is worth reiterating that the undisputed facts show that High Times Holding Corp.'s board of directors met on January 5, 2020, only a short time after the Whatsapp chat (especially given the holidays and the new year), and expressly voted to only authorize the sale of the www.420.com for a price exceeding what either Plaintiff or Trellian was willing to pay (see Abramovich Affidavit D.E. 112-1, Exh. 2, "**RESOLVED**, that the Company be, and hereby is,

written contract. D.E. 117, at p. 2. Such willingness "to accommodate" constitutes assent. *Id.* Plaintiff calls a rose by any other name. Conversely, if Plaintiff's "willingness to accommodate" these conditions precedent cannot be viewed as express assent, Mr. Levin's "willingness to accommodate" a particular price point at the beginning of the chat should likewise not be viewed as express assent to an offer. Defendants do not need to show trade custom because the chat transcript incorporated in the Complaint shows Mr. Kauffman's course of dealing with a "good PA" to be negotiated through "redline." D.E. 1-2 at pp. 33, 35.

Plaintiff also flounders in distinguishing *S. Internet Sys. v. Pritula,* 856 So. 2d 1125 (Fla. 4th DCA 2003), which held that "the implied covenant of good faith should not be invoked to override the express terms of the agreement between the parties." *Id.* at 1127. Plaintiff invents a distinction between "wanted to" bad faith and a new, oxymoronic "needed to" bad faith. D.E. 117 at p. 17. But bad faith is bad faith. Motivations do not matter.

**II.    UCC Statute of Frauds.**

   **A. Plaintiff's case law shows that 420.com is a good subject to the UCC.**

Contrary to Plaintiff's representation that "not a single case … establishes domains are goods," *Margae, Inc. v. Clear Link Techs., LLC*, 620 F. Supp. 2d 1284, 1288 (D. Utah 2009) does just that. D.E. 117 at p. 18; D.E. 112 at p. 14. Plaintiff's cases actually support Defendants' position that the trademarked

---

authorized to sell the website domain www.420.com for a cash purchase price of not less than $350,000 and be it further; and it is further").

4

domain 420.com is a good, subject to the UCC Statute of Frauds. See Resp. at 18 (citing *Dorer v. Arel*, 60 F. Supp. 2d 558 (E.D. Va. 1999)). In *Dorer*, the Court recognized a dichotomy among domain names. "In most cases, a domain name registration is valueless apart from the way it is used by the entity with rights to it." *Id.* at 561. In this situation, the domain name "arguably entails only contract, not property rights." *Id.* However, other domains constitute goods because they "are valuable assets as domain names irrespective of any goodwill which might be attached to them." *Id.* Domains are goods when they have "significant value on the open market" or are "otherwise extremely valuable to Internet entrepreneurs." *Id.* Plaintiff's complaint hinges on the assumption that the domain name 420.com is "extremely valuable," or in Plaintiff's words, "a rare domain name." *Id.*; D.E. 111-1, ¶ 25. The domain name 420.com constitutes a good.

    Plaintiff also misattributes a memorandum submitted by a litigant in Utah as an order.[2] Response, D.E. 117, at p. 19. Even Mr. Kauffman's favorite litigant supports Defendant's position. Mr. Kauffman seeks to obtain an "independent property interest in the domain name itself," rather than "services" associated with the registration of the domain name. *Id.* Therefore, the subject of the WhatsApp chat is a good, subject to section 672.201 Florida Statutes.

---

[2] The portion of the memorandum quoted by Plaintiff appears on page 11 of the attached Exhibit.

To the extent that the chat qualifies as a hybrid contract involving both goods and services, because the thrust of the chat is for goods, it would be subject to the UCC's statute of frauds. Because the words in the chat speak for themselves, there is no factual dispute that would preclude an entry of summary judgment. *Cf. Wacker Chem. Corp. v. Nebula Glass Int'l,* 10-62130, 2011 U.S. Dist. Lexis 169369, at *10-17 (granting motion to dismiss based on *BMC Indus. v. Barth Indus., Inc.*, 160 F.3d 1322 (11th Cir. 1998)).

### B. The Partial or complete performance exception does not apply.

Plaintiff cites the wrong statute of frauds to argue the partial or complete performance exception. *Hosp. Corp. of Am. v. Assocs. in Adolescent Psychiatry,* 605 So. 2d 556 (Fla. 4th DCA 1992). *Hosp. Corp.* addresses section 725.01, Florida Statues (common law statute of frauds), but not section 672.201, Florida Statutes (UCC statute of frauds). In the UCC context, the exception applies "with respect to goods that have been *received* and accepted." *Impossible Elecs. Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 669 F. 2d 1026, 1033 n. 7 (5th Cir. 1982) (emphasis added). The domain name has not been received. Therefore, the exception does not apply. *Id.* Further, the exception "applies only when a plaintiff seeks *purely* equitable relief."

Plaintiff recognizes that the performance exception is "not available in an action solely for damages at law." D.E. 117 at 20 *(quoting Hosp. Corp.*, 605 So. 2d 556, 558 (Fla. 4th DCA 1992) (quoting *Dwight v. Tobin,* 947 F.2d 455, 459 (11th

6

Cir. 1991). This is because the partial performance doctrine may only be granted "for the purpose of granting specific performance." *Dwight,* 947 F.2d at 459. Accordingly, courts have further limited the exception to "*only* when a plaintiff seeks *purely* equitable relief." *White Constr. Co. v. Martin Marietta Materials, Inc.*, 633 F. Supp. 2d 1302, 1336 (M.D. Fla. 2009) (quoting *Eclipse Med., Inc.*, 262 F. Supp. 2d at 1346, 1346 n. 6 (S.D. Fla. 1999) (emphasis added)). Because the Complaint seeks both legal *and* equitable relief, the action is not "purely" for equitable relief. *Id.* The Complaint's prayer for money damages precludes application of the performance exception. *See* D.E. 1 at 5. Further, as argued in Defendants' response, the equitable relief sought is not available. *See* D.E. 116 at p. 18 (quoting *Glob. Dig. Sols. v. Grupo Rontan Electro.*, 18-80106, 2019 U.S. Dist. LEXIS 229680, at 13 (S.D. Fla. Nov. 15, 2019).

Even if the partial performance exception applies, receipt of a wire transfer does not automatically constitute performance because no "affirmative action" is required on the part of the recipient. *Vitality Sys. v. Sogeval Labs., Inc.*, 8:09-cv-200, 2009 U.S. Dist. LEXIS 60982, at 11-12 (M.D. Fla. July 16, 2009) (finding disputed facts in motion for summary judgment). Plaintiff would bear the burden of proving performance because this is an exception to an affirmative defense. *See Moore v. Feinerman*, 515 F. App'x 596, 598-99 (7th Cir. 2013). ("Although a defendant generally bears the burden of proving an affirmative defense, like exhaustion, a plaintiff typically bears the burden of establishing an exception to it."). The uncontradicted record evidence, including Plaintiff's own complaint,

7

shows that Defendants actively sought to return the wired funds by calling Plaintiff. Defendants' repeated phone calls to Plaintiff appear in the purported agreement incorporated in the Complaint. See DE 1-1 at p. 35 (showing repeated "missed voice call[s]."). Mr. Levin also confirmed by affidavit that Mr. Levin attempted to return the wired funds to Mr. Kauffman in his January 2021 phone call with him, but Mr. Kauffman refused. DE 112-2, ¶ 13. Mr. Kauffman does not contradict Mr. Levin's summary in either of his two summary judgment affidavits, even after an opportunity to respond to Mr. Levin's affidavit. Instead, Mr. Kauffman suggests "hearsay." D.E. 117, at p. 5. But Mr. Levin attesting to what he himself said to a party-opponent is not hearsay.

### III. Standing

Plaintiff's argument that he individually was a party to purported agreement contradicts the chat transcript. In the chat transcript incorporated in the Complaint, Plaintiff states: "[a]ctually for PA, use name Trellian Pty Ltd Since it is wiring … Party." D.E. 1-1 at p. 32. In his Response, Plaintiff maintains that he is a separate entity from Trellian. D.E. 117-1, ¶ ¶ 7 – 11. Plaintiff's description of himself as a separate entity confirms that references in the chat transcript to Trellian as a "Party" relates to standing (not waivable) rather than the doctrine of real party in interest (waivable). *See Live Entm't Inc. v. Digex, Inc.*, 300 F. Supp. 2d 1273, 1278 (S.D. Fla. 2003). The waivable real party in interest doctrine does not apply here because the doctrine applies only when "there exists a substantial identity of interest between the original plaintiff and the true party in interest."

*Delta Coal Program v. Libman*, 743 F.2d 852, 856 (11th Cir. 1984). Instead, Plaintiff's designation of Trellian as a party on the "PA" is purely a matter of nonwaivable standing. In a breach of contract action, Plaintiff bears the burden of establishing standing, and cannot rely on the legal rights of other entities. *See Crowley Mar. Corp. v. Robertson Forwarding Co.*, 20-20151, 2020 U.S. Dist. LEXIS 135131, at *7 (S.D. Fla. July 30, 2020) (finding that parent lacked standing to enforce contractual rights of subsidiary). Plaintiff's after-the-fact explanation does not nullify Plaintiff designating Trellian as the party on the "PA."

## IV. Authority

Although transactions within the "ordinary course of business" allow for presumptions with respect to apparent authority, Plaintiff erroneously assumes that the only type of business outside of the "ordinary course of business" is "the sale of all or substantially all" of a business' assets. Reply at 22-23 (quoting *Lensa Corp. v. Poinciana Gardens Ass'n,* 765 So. 2d 296, 298 (Fla. 4th DCA 2000). This assumption is refuted by *Fla. Power & Light Co. v. McRoberts*, 257 So. 3d 1023 (Fla. 4th DCA 2018). In *McRoberts*, the parties conducted business outside of the ordinary course of business because of the venue in which the business occurred (a football stadium), the size of the transaction ("multi-million dollar obligation"), and the nature of the defendant ("highly regulated utility"). *Id.* at 1027. Here, Mr. Kauffman negotiated an opportunity in the same casual forum where he discusses airline miles, acknowledged that the size of the transaction is his "biggest," and sought substantial assets from a public company "highly

regulated" by the Securities and Exchange Commission. *Id.;* Compl, Ex. B at 28. Such exchange did not occur in the "ordinary course of business."

To argue otherwise, Plaintiff relies on yet another settlement case, where enforcement is "highly favored" compared to enforcement of business opportunities. *Pearson v. Skydell*, 522 F.2d 171, 176 (5th Cir. 1975) (quoting *D.H. Overmyer Co. v. Loflin*, 440 F.2d 1213, 1215 (5th Cir. 1971)). Plaintiff relies on *In re Rolsafe Int'l, LLC*, 477 B.R. 884, 906 (Bankr. M.D. Fla. 2012). In *Rolsafe*, the officer of a bank presented a counteroffer after advising plaintiff that the bank officer would run the plaintiff's original offer "up the flagpole." *Id.* at 905. The court determined that presenting a counteroffer *after* the "up the flagpole" representation implied that the officer had apparent authority to present the counteroffer. *Id.* Unlike the bank officer, Mr. Levin made no offer or counteroffer *after* indicating that anything went "up the flagpole." Consequently, Mr. Levin did not imply that Defendants ("the flagpole") approved of Mr. Levin's negotiation position.

                                                Respectfully submitted,

                                                <u>/s/ Jesse Haskins</u>
Jesse A. Haskins
Fla. Bar No. 78974
Jesse@jhaskinslaw.com
J Haskins Law, PA
10437 Canary Isle Drive
Tampa, Florida 33647
Telephone: (919) 667-4689
Attorney for Defendants

**CERTIFICATE OF SERVICE**

I certify that on March 21, 2022, the foregoing documents have been furnished by e-portal to Concept Law Group, PA, 6400 N. Andrews Ave., Suite 500, Ft Lauderdale, FL 33309; (754) 300-1500; rkain@complexip.com and DSpielman@ConceptLaw.com.

/s/ Jesse Haskins
Jesse A. Haskins
Fla. Bar No. 78974
Jesse@jhaskinslaw.com
J Haskins Law, PA
10437 Canary Isle Drive
Tampa, Florida 33647
Telephone: (919)667-4689
Attorney for Defendants