# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| MERLIN KAUFFMAN, an individual,<br>　　　Plaintiff,<br>v.<br><br>TRANS HIGH CORPORATION, a New York company and HIGH TIMES HOLDING CORPORATION, a Delaware company<br>　　　Defendant. | Case No.:　3:20-cv-17-J-34JBT<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF HIS CROSS MOTION FOR SUMMARY JUDGMENT** |

Plaintiff, Merlin Kauffman ("Kauffman"), hereby files his Reply in Support of his Cross Motion for Summary Judgment, and states as follows:

First, Defendants fail to respond to Plaintiff's Statement of Undisputed Material Facts ["SOUMF"]. As such, Plaintiff requests this Court accept as true all of said SOUMF, and correspondingly grant summary judgment. FED.R.CIV.P. 56(e) ("If a party fails to properly…address another party's assertion of fact…the court may…consider the fact undisputed…"); *see also Harrison v. Culliver*, 746 F.3d 1288 (11th Cir.2014) (failure to dispute facts and present contrary evidence yields an independent basis for summary judgment). Even aside from its fatal error of not responding to the SOUMF, Defendants' substantive arguments still fail. Limited in space, Plaintiff follows the outline of its Initial Brief to reply herein.

**Section (B)(1): Contract**.  Defendants argue that a formal agreement was never reached, yet fail to refute Plaintiff's legal citations indicating that signatures are <u>not</u> required before a contract is deemed enforceable. Instead, Defendants improperly assert that the contract here relates to the UCC sale of

1

goods. Plaintiff dispels of this "goods" falsity in the Opposition brief to the cross motion, [ECF 117], and incorporates those arguments herein. For those reasons, no "signature" or formal written agreement was required in this instance.

Equally telling, Defendants do not directly dispute that there was an offer to transfer the 420.com domain for $307,500. Instead, drawing from jargon used in other inapplicable case law, Defendants, *for the first time*, now argue that the parties were mere "negotiators" who were "bickering" over potential deal points. Such a contention is belied by the parties' record communications. The parties here were indeed initially negotiating a sales price, <u>but</u> ultimately compromised their respective positions to arrive at the final price of $307,500. *See* [ECF 111, at 11].

Defendants also argue there was no "formal assent" to the material terms. This argument, however, necessarily avoids reading the parties' communications chronologically and, instead, Defendants myopically focus on the words "yes," "confirmed," "thanks," and "cool" in isolation, without ever acknowledging how the terms were used in the parties' communication. After isolating these words, Defendants attempt to extrapolate the parties' "subjective" mindset on what they believed the terms meant. Fatal to this position, Florida law requires an objective analysis of the communications in adjudicating the existence of a contract.

> 'Under the objective standard of assent, [courts] do not look into the subjective minds of the parties; the law imputes an intention that corresponds with the reasonable meaning of a party's words and acts.' 'As long as an intent to settle essential elements of the cause can be established, it matters not that the agreement is not fully executed or reduced to writing, as even oral settlements have been fully recognized and approved by the [Florida courts].' 'In assessing whether the proponent of the unsigned agreement has made the

2

> requisite showing, courts use an objective standard under which '[t]he making of a contract depends…**not on the parties having meant the same thing but on their having said the same thing**.'

*Palmer v. Diamond Resorts Int'l Club, Inc.*, 2020 WL 1027450, at *2 (M.D. Fla. Feb. 14, 2020), *report and recommendation adopted*, 2020 WL 998722 (M.D. Fla. Mar. 2, 2020) (internal citations omitted)(emphasis added).

Against this proper "objective" backdrop, mutual assent is unequivocal. Here, Defendants' CEO asked Plaintiff "**to split the difference**" between Defendants' $350,000 demand and Plaintiff's $275,000 proposal. After a telephone conversation, Plaintiff then sent a text which read, "**$307.5k for 420.com Please confirm**," to which Defendants' CEO <u>immediately</u> replied, "**Yes Thanks Confirmed**." *See* [ECF 111, at 11]. Upon **confirming** the sale for $307,500, Defendants provided Plaintiff with wiring instructions, and told Plaintiff to inform Defendants "when [the wire was] sent and how [Plaintiff would] like to transfer" the domain. Plaintiff replied to indicate "Wire Enroute," to which Defendants responded, "once received I'll send it over, cool???," at which point Plaintiff confirmed "of course." *Id*. at 12. Again, these simple communications present an irrefutable agreement that the domain was sold for $307,500, and would be transferred once the funds were received. No other terms were even hinted at in this straightforward dialogue. To this end, Defendants' efforts to complicate and confuse this otherwise plain exchange should be rejected, as "[w]here the language is plain a court should not create confusion by adding

3

hidden meanings, terms, conditions, or unexpressed intentions." *Caracol Television v. Telemundo Studios, LLC,* 2022 WL 202546, at *3 (11th Cir. 2022).[1]

Defendants also attempt to, for the first time, refute Plaintiff's Expert report. Since Defendants failed to retain a rebuttal expert, they clearly seek to distract the Court with argument that it may not rely on Plaintiff's Expert for contract interpretation. This is wrong. Courts can, and do, rely on extrinsic evidence of experts for contract interpretation and explanation of custom and trade usage. *See NCP Lake Power, Inc. v. Fla. Power Corp.*, 781 So. 2d 531, 538 (Fla. 5th DCA 2001) (proper to consider expert testimony, "some of which relates to custom and trade usage"); *Aecom Tech. Serv., Inc. v. Prof'l Serv. Indus., Inc.*, 2021 WL 6197782, at *4 (M.D. Fla. Dec. 29, 2021)(accord). In other words, "'evidence of extrinsic facts and circumstances which demonstrate the parties' intent,' including testimony regarding industry custom and practice, is admissible and susceptible to expert testimony." *Hemisphere Holdings I, LLC v. Wal-Mart Stores E., LP*, 2016 WL 7538834, at *2 (S.D. Fla. Aug. 17, 2016); *see also Employer Reinsurance Corp. v. Laurier Indem. Co.*, 2006 WL 1679366, at *17 (M.D. Fla. June 19, 2006).

---

[1] Defendants' case law is inapposite to the facts here, and do nothing to further their opposition. *See, e.g., Esprit Stones Private Ltd. v. Rio Stone Group, Inc.*, 2021 WL 4935648, at *2, *7 (M.D. Fla. July 28, 2021) (the record there showed that "payment terms" were not agreed upon, as the plaintiff contended "the parties initially 'never discussed…payment terms,'" and that it "had 'assumed [the payment terms] w[ere] cash on delivery'", and the defendant argued the parties "'continually negotiated" payment terms.); *TB Food USA, LLC v. Am. Mariculture, Inc.*, 2021 WL 1214862, *5 (M.D. Fla. March 31, 2021)(term sheet unenforceable where it lacked all essential terms, the parties' course of dealing always required formal written agreements, and the parties acknowledged written agreement was required through statements like "I understand we are close to an agreement"); *Meekins-Bamman Prestress, Inc. v. Better Constr., Inc.*, 408 So.2d 1071 (Fla. 3d DCA 1982) (contract unenforceable where the offer expressly required signature approval).

4

**Section (B)(1)(b) Consideration**. Defendants did not respond to this section, presumably because the consideration is clear and unmistakable.

**Section (B)(1)(c) Specification of the essential terms**. The parties' communications on the essential terms of the deal are unequivocally plain, clear and simple. Specifically, the parties negotiated the sale of the domain in exchange for a payment of $307,500, and agreed that upon receipt of the wired funds, the domain would be transferred. No other terms were discussed or hinted at during negotiation, and no other terms were needed to create an enforceable agreement. Despite this simplicity, Defendants urge the existence of several unresolved material terms, each of which is a red herring. Defendants argue the parties "had not agreed on the date of transfer," but this ignores its CEO's inquiry of whether it was acceptable to transfer the domain once the wire was received, to which the Plaintiff replied "of course." [ECF 111, at 12]. Defendants also suggest the deal is incomplete because the parties did not discuss the potential transfer of related trademarks. [ECF 116, at 10]. Who cares this wasn't discussed? It does not matter. The transaction concerned the domain; the existence of any other assets need not be considered. The value or usefulness of related trademarks *post*-transfer is irrelevant. The final suggestion that the parties were not identified is another distraction. The ONLY time Trellian was raised was *post*-contract when Plaintiff was trying to accommodate Defendants' after-the-fact request for certain concessions. It is of no moment that the concessions were never accommodated.

**Section (B)(2): Authority**. The list of actions taken by Levin as Defendants' CEO and Chairman, establishing his apparent <u>and</u> actual authority, are thoroughly explored in Plaintiff's brief. Yet, Defendants fail to challenge the entirety of these activities, and instead nitpick isolated issues. Such an approach is improper, as the agent's conduct must be analyzed in its entirety. *See generally Premier Gaming Trailers v. Luna Diversified Enterp, Inc.*, 304 F. Supp. 3d 1270 (M.D. Fla. 2018). Indeed, beyond the uncontroverted *appearance* of Levin's authority, even Defendants' prior CEO, Stormy Simon, presented **unrefuted testimony** that Levin acted with full unfettered authority on Defendants' behalf, and all board members were aware of such conduct. [ECF 111-10] Given this reality, Defendants' silence over Levin's conduct solidifies, *at a minimum*, Levin's apparent authority. *Premier Gaming*, 304 F. Supp. 3d at 1283 ("[a] principal can create the appearance of an agent's authority 'by knowingly permit[ting] [an] agent to act in a certain manner as if he were authorized,' 'by failing to correct a known misrepresentation by an agent that he or she has certain authority,' or 'by silently acting in a manner which creates a reasonable appearance of an agent's authority.'"). Nevertheless, Defendants desperately claim that the Board Resolution was rendered "to correct" a potential misunderstanding; but, in doing so, all Defendants do is confirm that Levin negotiated a deal with Plaintiff that Defendants sought to avoid after-the-fact by labeling it a mistake that they needed "to correct." Such an after-the-fact strategic "sellers-remorse" maneuver must fail.

6

**Section (B)(3) Permanent Injunctive Relief.** Defendants fail to address all aspects of this section, and merely allege that specific performance is not available. However, not one of the cases cited by Defendants actually relate to domain transfers. Defendants attempt to allege that the total comparable domains are 46,656, but, as noted, the actual comparable three-digit number domains reflect only 1,000 possible combinations. [ECF 111-1 Kauffman Decl. ¶ 28]. Defendants allege the fair market value is established to determine damages, and, therefore, no specific performance is required; but, this position is belied by the fact that the domain is not a good, but instead a services contract. Defendants' failure to address the other elements is a waiver of such defenses.

**WHEREFORE**, Plaintiff requests entry of Summary Judgment, including an injunction compelling the transfer of the domain and any additional just relief.

**March 21, 2022**.                Respectfully Submitted:
/s/*Darren Spielman*
Darren Spielman, Esq. (FL Bar No 10868)
DSpielman@Conceptlaw.com
Alexander D. Brown, Esq. (FL Bar No 752665)
ABrown@ConceptLaw.com
The Concept Law Group, P.A.
6400 N. Andrews Ave., Suite 500
Fort Lauderdale, Fl 33309
(t): 754-300-1500; (f) 754-300-1501
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on **March 21, 2022,** that the foregoing document is being filed and served via ECF to all counsel of record.

By:   /s/*Darren Spielman*
Darren Spielman, Esq. (FL Bar No 10868)

7